IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,  :
:
v.  :  CRIMINAL NO. 05-266-02 (ESH)
:
NORA DAVTYAN,  :
:
Defendant.  :



FILED

SEP 1 3 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**FACTUAL PROFFER IN SUPPORT OF PLEA**

The defendant NORA DAVTYAN and the United States agree that the following facts are true and correct, and that if this matter were to proceed to trial the United States would prove these facts beyond a reasonable doubt:

1. NORA DAVTYAN is a national of the Republic of Armenia ("Armenia"), who entered the United States on a nonimmigrant visa on June 30, 2004, and remained in the United States, without authorization, after the visa expired later that year. From June 30, 2004, until her arrest and transfer to this District, she resided in the vicinity of Los Angeles, California, staying for most of that time with her sister, codefendant Gayane Davtyan, who is an Armenian national who has resided in the United States since 1991 and is a Lawful Permanent Resident of the United States. Codefendant Natalya Balayan ("Balayan") is an Armenian national who resides in the vicinity of Yerevan, Armenia, and is a longtime friend of NORA DAVTYAN. During 2003, Balayan entered into a romantic relationship with Piotr Zdzislaw Parlej ("Parlej"), a United States national who was employed as a consular officer at the United States Embassy in Yerevan, and they maintained that relationship into 2005.

2. As a consular officer, Parlej had official duties that included conducting in-person interviews of visa applicants, reviewing their visa application papers, and determining whether any given applicant was qualified under United States law to receive a visa for entry into the United States, and then issuing visas to those whom he deemed to be so qualified. One basis for refusing to issue a nonimmigrant visa is a determination that the applicant is an "intending immigrant" – that is, someone who was unlikely to return home after arriving in the United States, but who instead would remain in the United States without authorization. Once having been deemed an "intending immigrant", a person who thereafter re-applies for a nonimmigrant visa is unlikely to be issued one, without first presenting substantial evidence to overcome the presumption that he or she is still an "intending immigrant".

3. NORA DAVTYAN had previously applied for a United States nonimmigrant visa, but had been denied such a visa on grounds that she was deemed an "intending immigrant". In or about early Spring 2004, NORA DAVTYAN, Balayan, and Parlej entered into an agreement that NORA DAVTYAN would pay, through Balayan, a $4,000 bribe to Parlej for him to issue to her a United States nonimmigrant visa. On April 12, 2004, Parlej issued the visa to NORA DAVTYAN, and she paid the bribe. Before leaving Armenia, NORA DAVTYAN told Parlej she would find additional people willing to pay bribes for him to issue visas to them, and both he and Balayan agreed to the scheme.

4. When NORA DAVTYAN came to the United States, she resided with her sister Gayane Davtyan, and told Gayane Davtyan about how she had obtained her visa.

2

5. Gayane Davtyan knew of a woman ("the woman") in the vicinity of Los Angeles, California, who had a mother-in-law in Armenia – referred to in the Indictment as "R.S." – who was an Armenian national. The woman wanted "R.S." to come to the United States, but "R.S." had applied for a United States nonimmigrant visa on three (3) occasions during 1999-2002, and on each occasion had been refused a visa on grounds that she was deemed an "intending immigrant". Gayane Davtyan told the woman that her sister, NORA DAVTYAN, could arrange for "R.S." to obtain a visa, and introduced the woman to NORA DAVTYAN, who explained they were working with someone inside the United States Embassy in Yerevan. Gayane Davtyan told the woman that it would cost "R.S." and the woman $15,000 for "R.S." to obtain a nonimmigrant visa, payable after the visa was issued. The woman agreed they would pay the bribe, and she gave to Gayane Davtyan the phone number of "R.S." in Yerevan. NORA DAVTYAN provided that phone number to Balayan, who later phoned "R.S." at that number.

6. On September 27, 2004, Parlej issued a United States nonimmigrant visa to "R.S." Thereafter, "R.S." paid $4,000 to Balayan in Yerevan, and the woman in California gave $11,000 to NORA DAVTYAN. NORA DAVTYAN passed $6,000 on to Parlej, through Balayan, and kept the remaining $5,000. Throughout these transactions, NORA DAVTYAN resided with Gayane Davtyan.

7. On October 21, 2004, "R.S." entered the United States on the nonimmigrant visa; she did not return to Armenia when the visa expired, but instead remained in the United States without authorization.

3

8. In or about November 2004, NORA DAVTYAN discussed with Balayan, by telephone, a person in Armenia – referred to in the Indictment as "R.Z." – who had previously been refused a United States nonimmigrant visa on grounds that he was deemed an "intending immigrant" and who was willing to pay a $10,000 bribe to obtain such a visa.

9. In or about January 2005, NORA DAVTYAN discussed with Balayan, by phone, a person in Armenia – referred to in the Indictment as "H.K." – who had previously been refused a United States nonimmigrant visa on grounds that she was deemed an "intending immigrant" and whose family was willing to pay a $15,000 bribe for "H.K." to obtain a United States nonimmigrant visa.

10. On January 12, 2005, Parlej issued a United States nonimmigrant visa to "H.K." Thereafter, "H.K."'s family paid $15,000 to NORA DAVTYAN, who passed $10,000 to Parlej, through Balayan, and kept the remaining $5,000. Thereafter, "H.K." entered the United States on the nonimmigrant visa.

11. NORA DAVTYAN knew that in telling people that it would cost money for their relatives in Armenia to obtain a United States nonimmigrant visa, she was soliciting a bribe for Parlej, who was her associate inside the United States Embassy in Yerevan, and she knew the scheme was illegal.

12. At all times, with respect to the conduct described in this Factual Proffer, the defendant NORA DAVTYAN acted knowingly, unlawfully, purposefully, and with the specific intent to violate the law, and not by accident, inadvertence, mistake, or other innocent reason.

Respectfully submitted,

KENNETH L. WAINSTEIN
UNITED STATES ATTORNEY
D.C. Bar Number 451058

By: _____
Laura A. Ingersoll
Assistant United States Attorney
Connecticut Bar No. 306759
202/514-9549
Laura.Ingersoll@usdoj.gov

_____
Brenda J. Johnson
Assistant United States Attorney
D.C. Bar No. 370737
202/353-4154
Brenda.Johnson@usdoj.gov

Transnational and Major Crimes Section
United States Attorney's Office
555 4th Street, N.W. – 11th floor
Washington, D.C. 20530

Dated: _____, 2005

After consulting with my attorney, Cary Clennon, and pursuant to the plea agreement entered into this day between me, Nora Davtyan, and the United States, I hereby stipulate and agree that the above Factual Proffer – which has been translated for me into the Russian language, which I can read and understand – is true and accurate, and that had this matter proceeded to trial, the United States would have proved beyond a reasonable doubt the facts stated in the Factual Proffer.

9/13/05
Date

Nora Davtyan
Nora Davtyan, Defendant

I am Nora Davtyan's attorney. I have carefully reviewed the above Factual Proffer with her. To my knowledge, her decision to stipulate and agree to these facts is an informed and voluntary one.

9/13/05
Date

Cary Cle
Cary Clennon, Esquire
Counsel for the Defendant