**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Crim. No. 05-266-02 (ESH) |
| : | |
| NORA DAVTYAN : | |

MEMORANDUM IN AID OF SENTENCING

Nora Davtyan, through undersigned counsel, respectfully submits this Memorandum In Aid of Sentencing to assist the Court in fashioning an appropriate sanction.  Sentencing is set for December 9, 2005.

Nora Davtyan entered a plea of guilty to one count of conspiracy to defraud the United States by committing bribery and visa fraud, in violation of 18 U.S.C. §371.  What eventually developed into an incredibly serious and destructive chapter in Nora Davtyan's life began as nothing more than her unquenched desire to reunite with her only sister after a separation of fourteen years.  When Nora Davtyan learned that she could gain entry to the United States, a place where her younger sister had successfully emigrated to fourteen years earlier, she jumped at the opportunity.  The mechanism for making that dream a reality, the payment of a fee for a previously-denied non-immigrant visa, represented to her, an Armenian raised under the communist apparatus of Soviet Russia, nothing more than a tip, a bureau- cratic necessity that typical Armenians were skilled in over-

coming.  The flux of applicants for said visas in Yerevan, Armenia, is a testament to our country's magnetic draw and corroborative of Nora Davtyan's common hunger to join her sister here.  Rather than engaging with criminal intent, Nora Davtyan, with a simple but proud upbringing, shared the same hopes that most immigrants have, legal or not: the opportunity to help her family.  Indeed, from her meager subsistence earnings as a home care aide Nora Davtyan faithfully wired American dollars to her frail and ailing parents in Armenia.

Nora Davtyan was not an architect of this scheme but a willing victim.  The plot was not her design nor was it her gateway to riches.  Nora Davtyan had no access to fifteen thousand dollars to buy herself a visa.  Like so many victims of immigration schemes, Nora Davtyan arrived in America with a debt to repay.  She knew not the consequences of reneging on her debt to Natalya Balayan and Balayan's presumed paramour Piotr Parlej, the corrupt State Department official who betrayed his employer, the United States of America.  Nora Davtyan was instructed to pay off her debt to Parlej and Balayan by recruiting prosperous Armenians in America who, like so many, strongly desired to reunify their families that had been split by emigration.  Like the sisters Davtyan, the Armenians they had contact with in California were proud and struggling immigrants merely trying to reach back and help other family members reach America.

As the attached letters indicate (Exhibits 1-8), immigration to America is obviously common and popular among Armenians.  Most

are able to accomplish their goals legally.  Nora, single and childless, fell for the bait carefully lain by her trusted friend Natalya Balayan and Balayan's connected cohort.  Nora Davtyan did not bring this scheme to a United States official, and did not offer tempting lures.  To the contrary, this irresistible scheme was brought to her.  The attached letters from family and friends say more about the true Nora Davtyan than counsel ever could.

   The Court should exercise leniency and mercy in sentencing Nora Davtyan for several reasons.  As the attached letters attest, her life has been one of service and devotion to family and community, especially those in need.  She has no other criminal history and, in all likelihood, presents no risk whatsoever of recidivism.  She has punished herself in a real way that we U.S. citizens can hardly imagine: she will be deported to her struggling homeland, effectively disqualifying herself from eventual admission, and likely forever separating herself from her little sister, both of whom obviously adore one another.

   Another extremely difficult circumstance the Court should consider is the incredibly harsh environment the D.C. jail presents for a non-English-speaking, older Caucasian woman.  It was basically impossible for Ms. Davtyan to have any contact with family in Ohio and California because she could not make phone calls.  Correctional officers denied her privileges because she could not communicate with them.  Only through intervention by counsel was Ms. Davtyan able to receive necessary medical attention.  Basic toiletries were denied her, she was unable to

access her inmate account or use the commissary, and even some long-distance visitors were denied visiting access to her at the institution.  Even though Ms. Davtyan was eventually moved to CTF, typical inmate communication with the outside world was severely limited for her.  Anxiety and depression have been common companions for her throughout this ordeal.  Counsel echoes the letter writers in requesting the Court to strongly recommend a federal designation in southern California near her family and friends.  The uprooting and disorientation surrounding her removal from Los Angeles to the District of Columbia, given her circumstances, has been an incredible burden that few incarcerees are bound to suffer.

Although these considerations would have in the past been ordinarily not relevant under the United States Sentencing Guidelines, in *U.S. v. Booker* and *U.S. v. Fanfan*, __ U.S. ___, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), two separate majority opinions of the United States Supreme Court effectively eliminated the mandatory nature of the U.S. Sentencing Guidelines and resurrected the traditional sentencing factors enumerated at 18 U.S.C. §3553(a)(1-7).  The statute now supersedes the guidelines and requires the court to impose a sentence "sufficient but not greater than necessary" to achieve the purposes of sentencing (18 U.S.C. §3553(a)(2)(A-D)) after considering:

> (1)   the nature and circumstances of the offense and the history and characteristics of the defendant;

    (2)    the kinds of sentences available;

    (3)    the kinds of sentences and the sentencing range established by the now-advisory U.S. Sentencing Guidelines;

    (4)    the need to avoid unwarranted sentencing disparity among defendants with similar records that have been found guilty of similar conduct, and;

    (5)    the need to provide restitution to any victim of the offense.

In evaluating the sentencing range established by the now-advisory guidelines, the Presentence Report identifies at least one factor perhaps warranting a downward departure, that based on conditions of confinement that are the result of alienage and deportability. That potential departure clearly applies to Ms. Davtyan's situation.

Within the guidelines' analysis, other departures are available to the court. While the Defendant has agreed not to ask for a downward departure, or ask for a sentence outside the agreed-upon reasonable range, counsel would be remiss in failing to advise the court of its lawful options, just as the Presentence Report writer has attempted to do. Indeed, the guidelines analysis is not the be-all and end-all of reason ability.

In this case Ms. Davtyan could be considered for a 2- or 3-point reduction for her minor role in the offense, pursuant to U.S.S.G.§3B1.2. This is pertinent because Nora Davtyan was seemingly not the 'one-third partner' depicted by the factual proffers in these related cases. As pointed out on pp. 18-19 of

the Presentence Report, counsel interprets the government's evidence of wire transfers to show that of $11,000 paid to Nora Davtyan on September 27, 2004, she wired $9,000 to Balayan the following day, and paid $180 to do so.  Of the $15,000 paid to her in January 2005, Nora Davtyan wired $10,000 to Balayan on January 13 and $4,000 more on January 15 and paid $280 to do so.

   Clearly, Nora Davtyan's interests here were not mercenary in the traditional commercial sense.  She did not have an evil motive.  The base criminal intent we so blithely ascribe to similar defendants is not present in the typical manner here.  Rather than exploiting this situation as the criminal opportunity it was, Nora Davtyan harbored a naive belief in the assistance she was giving in helping families to reunite like she had been able to do for herself.  Peter and Natalya were the beneficiaries in Nora's eyes;  she was merely the willing conduit rewarded by the visa she herself so craved and valued.  Government counsel's warnings about the potential seriousness and dangerousness of this behavior are neither taken lightly nor disregarded.  They are real.  They simply aren't the issues in this case and involving these hard-working immigrants.

   A concluding thought should inform the Court's discretion.  Not only is one goal of the sentencing guidelines consistency, but also fairness.  A reasonable and fair evaluation of Nora Davtyan's situation will properly respect the principle of proportionality, a bedrock of sentencing law.  Although the main actor in these events was amply rewarded for telling what was

already known, the most culpable civilian got away despite the consular officer's sincere substantial assitance.  Nora Davtyan's position remains that of the marginal actor.

                          Respectfully submitted,


                          _____
                          CARY CLENNON, #366816
                          Counsel for Nora Davtyan
                          Appointed by the Court

                          P.O. Box 29302
                          Washington, D.C.  20017-0302
                          (202) 269-0969


## CERTIFICATE OF SERVICE

    I hereby certify that on this 9th day of December, 2005, copies of the foregoing Memorandum and attached exhibits were served electronically on all parties in this matter.


                          _____
                          CARY CLENNON